FILED
2013 Oct-07 PM 04:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) Case Number: 1:13-cr-00293-JHE |
| | ) |
| MATTHEW E. MADDEN, | ) |

## MEMORANDUM OPINION AND ORDER

On September 27, 2013, this action came before the Court for trial.[1] Special Assistant United States Attorney Shelby L. Starling, Jr., prosecuted the action for the government, and Assistant Federal Public Defenders Allison Case and Glennon Threatt represented Defendant Matthew E. Madden. After the conclusion of testimony and argument, the Court took this matter under advisement.

## FACTS[2]

The evidence establishes the following. On May 8, 2013, Jacksonville State University's Reserve Officers' Training Corps ("ROTC") participated in a training exercise on Pelham Range at Fort McClellan, in Calhoun County, Alabama. Pelham Range is on United States government property. That day, Defendant, an ROTC Cadet, was assisting his instructor, Major Paul Theissen ("Major Theissen") because he had already completed the training the previous year. At some point during the day, Defendant asked Major Theissen to retrieve his cellphone from his

---

[1] Defendant consented to trial before the undersigned United States Magistrate Judge and further waived his right to a jury. Doc. 5.

[2] To assist the reader in understanding the court's assessment of Defendant's guilt or innocence, a limited recitation of the facts is provided. These facts, however, are not intended as a complete statement of all the evidence presented at trial.

car, a Chevrolet Camero, which was parked about a mile and a half from the training area. Defendant asked Major Theissen to retrieve his cellphone because Major Theissen was transporting another Cadet to the civilian parking area where Defendant's car was parked. Major Theissen testified Defendant gave him his car keys, but Major Theissen did not remember whether Defendant directed him where in the vehicle to look for the cellphone. After Major Theissen dropped off the Cadet at his vehicle, Major Theissen proceeded to Defendant's vehicle to retrieve the cellphone. Major Theissen was familiar with Defendant's vehicle and had seen him drive it on previous occasions. After arriving at Defendant's vehicle, Major Theissen opened the center console (purportedly looking for Defendant's cellphone). Major Theissen discovered a plastic bag containing what he believed to be marijuana. He picked up the bag to confirm (by smell) it contained marijuana. Major Theissen then put the bag back in the console, closed the car door, and stepped away from the vehicle.

Major Theissen decided he needed to inform the authorities. He called a co-worker and asked who should respond. The co-worker was advised to call Officer Barbara Berryman ("Office Berryman"). Officer Berryman is the lead police office at the Fort McClellan Army Training Center. Officer Berryman drove to the civilian parking lot and spoke with Major Theissen. Major Theissen explained the circumstances surrounding the discovery of the suspected marijuana in Defendant's vehicle. Officer Berryman then requested Defendant be brought to his vehicle. Defendant was brought to his vehicle, and Officer Berryman asked him twice if there was anything inside his vehicle he knew of that might be illegal. Defendant answered "no." Officer Berryman identified herself and explained why she had been called to the parking lot. She requested Defendant's consent to search the vehicle and found the same suspected marijuana in a sandwich-type plastic bag Major Theissen discovered earlier. Officer

Berryman also found additional empty sandwich-type plastic bags underneath the suspected marijuana. She found Defendant's cellphone on the driver's side floor connected to a charging cable extending from the console. Officer Berryman was familiar with marijuana because she had been involved in many cases involving the possession of marijuana during her law enforcement career. Officer Berryman removed the suspected marijuana, later submitting it for testing. The substance found in Defendant's vehicle tested positive for marijuana.

Officer Berryman testified after she removed the marijuana, Defendant stated "those are not mine but I think I know who may have put them there." She asked Defendant to submit to a drug test, and he agreed.[3] Defendant also agreed to be interviewed by Officer Berryman and provided the name "Brent" as the individual he believed put the marijuana in his car.[4] When Officer Berryman asked Defendant why he believed Brent put the marijuana in his car, Defendant stated he had been out with some people to a restaurant and he had also loaned his vehicle to some people. Defendant also provided Officer Berryman the name "Jimmy Robinson." Robinson was the other person who went to the restaurant with Defendant and Brent. Officer Berryman testified she interviewed Robinson and he confirmed that on May 5, 2013, he, Brent, and Defendant went to a Mexican restaurant in Defendant's Camero. She further testified Robinson told her Brent was the last person to exit the vehicle at the restaurant, but did not take a long time to exit. Robinson testified Brent took "some time" exiting the vehicle at the restaurant.

---

[3] Defendant wanted to take the drug test the same day, but no one was available to administer the test. On his own, Defendant contacted his serve unit in Chattanooga, Tennessee and set up the test to be taken the next day in Chattanooga. He drove to Chattanooga the next day and tested negative for any controlled substance.

[4] Officer Berryman attempted to locate Brent, but was not able to do so.

Defendant took the stand and confirmed the facts as testified to by Officer Berryman concerning their interaction surrounding her seizure of the suspected marijuana from Defendant's vehicle. Defendant testified he knew Brent from playing intermural sports. He again denied knowing the marijuana was in his vehicle and maintained someone else placed it in his vehicle without his knowledge. On cross-examination, Defendant acknowledged several individuals had been in his vehicle between May 5th and 8th, and he could not definitively say if any of them placed the suspected marijuana in his vehicle.

## DISCUSSION

The United States argues the evidence at trial established beyond a reasonable doubt Defendant possessed marijuana, as charged in the information, in violation of 21 U.S.C. § 844. Defendant contends the government has not met its burden of proof because it has not established he knowingly possessed marijuana.

To convict a defendant of simple possession of a controlled substance, the government must prove beyond a reasonable doubt Defendant "knowingly or intentionally" possessed the controlled substance. *See* 21 U.S.C. § 844. Such possession may be actual or constructive. *See United States v. Knight*, 705 F.2d 432, 433 (11th Cir. 1983). Here, the government does not argue Defendant had actual possession of the marijuana, but relies on a theory of constructive possession. To prove constructive possession, the government must establish Defendant maintained dominion or control over the drugs or the premises where the drugs were located. *See United States v. Poole*, 878 F.2d 1389, 1392 (11th Cir. 1989); *United States v. Woodard*, 531 F.3d 1352, 1360 (11th Cir. 2008). Although proceeding on a theory of constructive possession, the government must nevertheless prove the "knowing" aspect of possession. *Cf. United States v. Cochran*, 683 F.3d 1314, 1320 (11th Cir. 2012) (reviewing a jury instruction for constructive

possession and cautioning against language that would create an inference constructive possession lacks an intentionality requirement). "'Constructive possession' of a thing occurs if a person doesn't have actual possession of it, but has both the power and the intention to take control over it later." 11th Cir. Pattern Jury Instructions (Criminal), Special Instruction 6 (2010).

The government contends it proved Defendant constructively possessed the marijuana because the marijuana was found in Defendant's vehicle, and the evidence established he owned the vehicle and was in exclusive possession and control of the vehicle at the time the contraband was found. The evidence does establish Defendant owned the Camero in which the marijuana, discovered by Major Thiessen, was located. Defendant testified he owned the Camero and admitted the same during the statement he provided to Officer Berryman. The substance recovered from Defendant's Camero was tested and determined to be marijuana. The only remaining issue is whether the government established Defendant *knowingly* possessed the marijuana beyond a reasonable doubt.

While control of the premises (i.e., the car) is evidence Defendant possesses its contents (i.e., the marijuana in the console), such control does not mandate a conviction based on a constructive possession theory. *See Cochran*, 683 F.3d at 1320. A defendant must *know* he possesses the drugs and such knowledge is not necessarily established if all that is proven is Defendant constructively possessed the premises. *Id.* Here, although the evidence establishes Defendant possessed his Camero, where the marijuana was found, it does not establish beyond a reasonable doubt Defendant knew he was in possession of a controlled substance.

## CONCLUSION

Based on the foregoing, the court finds Defendant not guilty as charged in the information.

**DONE** and **ORDERED** on October 7, 2013.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE